**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lydia Albarran, | No. CV-17-04451-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Lydia Albarran seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied her disability insurance benefits and supplemental security income under §§ 216(i) and 223(d) of the Social Security Act. The Court finds that the administrative law judge's ("ALJ") decision is based on reversible legal error and will remand for an award of benefits.

**I.    Background.**

Plaintiff is a 35 year old female who previously worked as a customer complaint clerk, a loan officer, and an electrologist. A.R. 69. Plaintiff applied for disability insurance benefits and supplemental security income on November 26, 2013, alleging disability beginning on August 1, 2012. A.R. 75-76 (initial disability onset date of September 1, 2011); A.R. 44 (amending disability onset date). On May 19, 2016, Plaintiff and a vocational expert testified at a hearing before an ALJ. A.R. 41. On June 23, 2016, the ALJ issued a decision that Plaintiff was not disabled within the

meaning of the Social Security Act. A.R. 24-34. This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 4, 2017. A.R. 1-6.

**II.  Legal Standard.**

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* "The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] substantial rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

**III.  The ALJ's Five-Step Evaluation Process.**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) she is not currently working, (2) she has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) her

residual functional capacity ("RFC") prevents her performance of any past relevant work. If the claimant meets her burden through step three, the Commissioner must find her disabled. If the inquiry proceeds to step four and the claimant shows that she is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016, and she has not engaged in substantial gainful employment since September 1, 2011. A.R. 26. At step two, the ALJ determined that Plaintiff has the following severe impairments: dysfunction of the major joints, fibromyalgia, and anxiety disorders. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment that meets the severity of one of the listed impairments. A.R. 27. At step four, the ALJ found Plaintiff has the RFC to perform sedentary work with some limitations, but she could not perform her past relevant work. A.R. 29-33. At step five, the ALJ concluded, considering Plaintiff's age, education, work experience, and RFC, that she was able to perform other work that exists in significant numbers in the national economy, such as document preparer, cashier, or call-out operator. A.R. 34.

**IV. Analysis.**

Plaintiff makes two arguments: (1) the ALJ erred by rejecting the opinion of Plaintiff's treating physician, and (2) the ALJ erroneously discredited Plaintiff's symptom testimony. Doc. 11 at 9-25.

**A. Medical Opinion Evidence.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted). Under either standard, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and internal quotation omitted).

Dr. Julius Charlie, who treated the Plaintiff in 2013, determined that Plaintiff is unable to work a forty hour week schedule. A.R. 340. Dr. Charlie opined that Plaintiff could sit for less than two hours a day, stand and walk for less than two hours a day, lift and carry less than ten pounds, and needs to alternate between sitting, standing, and walking every five minutes. *Id*.; A.R. 31. Dr. Charlie opined that Plaintiff experienced moderately severe symptoms and should expect to miss more than six days of work per month. A.R. 340; A.R. 31. The ALJ did not expressly find other medical opinions in the record contradicted Dr. Charlie's statement, but the Court can infer from the record that Dr. Charlie's assessment differed from non-examining physicians in regards to Plaintiff's ability to lift and carry, climb stairs and ramps, climb ladders and ropes, and sit for long periods of time. *See* A.R. 31; A.R. 109; *see also Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (the Court may infer from the record that an opinion is contradicted). Accordingly, to properly reject Dr. Charlie's decision, the ALJ must state "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

The ALJ summarized and apportioned weight to eight opinions in the record. A.R. 31-32. The ALJ gave Dr. Charlie's treating source assessment "little weight," but failed to explain why. A.R. 31-32. Because the ALJ's opinion lacks findings and interpretations of the clinical medical evidence, it does not state specific and legitimate reasons for rejecting Dr. Charlie's assessment. *See, e.g.*, *Trevizo*, 871 F.3d at 676-77 ("Far from 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings,' the ALJ pointed to nothing in [the treating physician's] notes or elsewhere in the clinical record that contradicted the treating physician's opinions.") (internal citation omitted)); *Winans v. Bowen*, 85 F.2d 643, 647 (9th Cir. 1987) ("[The ALJ's c]onclusion is not supported by substantial evidence because no specific reasons were given."); *see also Brown-Hunter*, 806 F.3d at 495 ("Although the ALJ's analysis need not be extensive, the ALJ must

provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

The Commissioner concedes that the ALJ's opinion lacks specific and legitimate reasons for rejecting Dr. Charlie's statement. *See* Doc. 15 at 4. The Commissioner argues, nonetheless, that the Court can infer that the ALJ found Dr. Charlie's assessment inconsistent with Plaintiff's medical records because, "[w]hen weighing the medical opinions in this case, the ALJ discounted those opinions, like Dr. Charlie's, that were inconsistent with the record." A.R. 32-32; Doc. 15 at 5-6; *see also Magallanes*, 881 F.2d at 755 (the reviewing court may draw specific and legitimate inferences from the ALJ's opinion). The Commissioner also emphasizes the greater weight the ALJ gave to the consultative exams because they were "consistent with the medical record" (Doc. 15 at 6), and that the ALJ stressed the "weight of the medical record" supported the residual functional capacity assessment (A.R. 32).

The Commissioner offers several examples of inconsistent evidence within Dr. Charlie's treatment records. Doc. 15 at 6-7. But it is not the job of the Court to take a general finding – in this case, an unspoken conflict between the medical records and the treating physician's opinion – and "comb the administrative record to find specific conflicts." *Burrell*, 775 F.3d. at 1138. The Court declines the Commissioner's invitation to scour the records for inconsistencies never identified by the ALJ. *See Bray v. Comm'r of Soc. Sec. Admin*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

An ALJ can reject a treating physician's statement if it is "unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014). But specific evidence must support this finding. *Id.* at 1138; *Spendlove v. Comm'r*, No. CV-17-08157-PCT-DGC, 2018 WL 3633744, at \*3 (D. Ariz. July 31, 2018) (ALJ did not properly reject doctor's opinion where he did not identify

any specific inconsistency within the notes). Here, on medical opinions for which the ALJ did give an explanation, he merely stated that the opinion was either consistent or inconsistent with the medical records, never detailing what medical records support or do not support the opinions. A.R. 31-32. For example, the ALJ afforded great weight to the postural limitations established by a non-examining DDS doctor, Dr. Griffith, but provided no explanation as to why the postural limitations are more consistent with the medical records than Dr. Charlie's. A.R. 31.

Nor can the Court discern the ALJ's reasons for rejecting Dr. Charlie's opinion by looking to how he dealt with the opinions of other doctors. His reasoning for other doctors generally was not revealed, and, in some cases, appears to be contradictory. For example, Dr. Sharon Steingard opined that the claimant had trouble with simple three-step tasks, limited persistence, and "she was likely to be distracting to people around her as she would fidget due to pain." A.R. 32. Dr. Karen Mansfield-Blair, by contrast, concluded that Plaintiff had the ability to "understand, remember, and carry out simple one to three step instructions and to engage in simple work-like procedures," that "[s]he would have few difficulties with sustained concentration and persistence," and that "[s]he was expected to interact appropriately with co-workers and supervisors." *Id*. And yet the ALJ gave "great weight" to both of them. *Id.*

The ALJ's error with respect to Dr. Charlie would be harmless if the Court could "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Dr. Charlie opined that Plaintiff could not work full time or sit, stand, or walk for long portions of the day. A.R. 340. The vocational expert testified that an individual needing to lie down for one to three hours over the course of the work day would not be able to perform Plaintiff's "past work and other work." *See* A.R. 71. The Court cannot conclude that the ALJ would have reached the same conclusions had he properly evaluated Dr. Charlie's opinion. The ALJ's error was not harmless.

## B. Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Revels*, 874 F.3d at 655 (citing *Garrison*, 759 F.3d at 1014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of her alleged symptoms, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.*[1]

The ALJ described Plaintiff's symptom testimony:

> The claimant alleged she had chronic pain and fatigue in the function report dated February 26, 2014. She explained she had her family help her with cleaning. She explained she had difficulty with sleeping. She explained she needed help preparing meals. She explained she could drive. She had no difficulties handling her finances. She alleged difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, completing tasks, and concentration. She explained she could walk half a block before having to stop and rest for up to five minutes before resuming walking. She explained she had difficulty following written instructions when she was in pain. She did not report difficulty getting along with authority figures. In the function report dated September 21, 2014, she did not note problems with memory or with completing tasks.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements

---

[1] The Commissioner argues the Court should uphold the finding unless it is "inherently incredible or patently unreasonable." Doc. 15 at 2 (citing *Retlaw Board. Co. v. Nat'l Labor Relations Bd.*, 53 F.3d 1002, 1005 (9th Cir. 1995)). The Commissioner asserts that "[a]n ALJ's credibility finding need only be 'sufficiently specific to permit the [reviewing] court to conclude that the ALJ did not arbitrarily discredit a claimant's testimony." Doc. 15 at 2 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)). But the *Bunnell* decision did not overrule the requirement for clear and convincing evidence. At most, it added the word "specific" to that requirement. *See Burrell*, 773 F.3d at 1136-37. The Commissioner's argument does not change the Court's analysis.

concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent and credible. *See* A.R. 30. The ALJ provided two reasons to support his finding (A.R. 30-31), and Plaintiff disputes both (Doc. 14 at 19-24).

### 1. First Reason.

The ALJ first found that Plaintiff's daily activities were inconsistent with her testimony:

> Despite the claimant's allegations of pain and fatigue, she was able to care for her daughter each day. She helped get her to school and helped with homework. She reported being able to ride her bike with her daughter in October 2012. These actions were inconsistent with the extent of the claimant's pain as alleged.

A.R. 30.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant "spend[s] a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639.

The ALJ relied on the Plaintiff's Function Report where she recounted her daily activities, including: getting her daughter ready for school, helping her daughter with homework, feeding her daughter, and playing with her daughter (reading or coloring). *See* A.R. 214. The ALJ also relied on a physical therapy report from October, 2012, which stated, "[Patient] reported pain is better today and feels pretty good. [Patient] stated she has been able to do more at home and has been riding her bike with her daughter more since starting therapy." A.R. 306.

- 9 -

Plaintiff argues that the ALJ failed to demonstrate how these activities are inconsistent with her testimony, and contends that "[r]eliance on the limited activities cited by the ALJ is particularly inappropriate when considering the severity of claimant's fibromyalgia, which is marked by 'ups' and 'downs' in symptom severity." *Id*. 16; *see also* Revels, 874 F.3d at 663. The Court agrees. The ALJ did not find that Plaintiff spent a substantial part of her day performing these activities. Nor did the ALJ explain why Plaintiff's activities were inconsistent with her claimed limitations. Further, statements in the same Function Report indicate that Plaintiff often receives assistance from her family members. A.R. 214-17. The Court cannot conclude that this is a clear and convincing reason to reject Plaintiff's symptom testimony.

### 2. Second Reason.

The ALJ reasoned that "inconsistent allegations concerning the claimant's symptoms made it difficult to understand how limiting her condition was in actuality." A.R. 31. The ALJ points to three pieces of evidence:

> [1] In the claimant's adult Function Reports, dated February 26, 2014 and September 21, 2014, there were inconsistent allegations concerning the claimant's memory, understanding, and ability to follow instructions. However she reported issues concerning her memory, understanding, and ability to follow instructions to the consultative examiner Sharon Steingard October 10, 2014.
>
> [2] She did not describe psychiatric problems in visits to Valley Arthritis Care. . . .
>
> [3] The claimant was noted as not taking her anxiety medication in April 2016. This was inconsistent with the allegations of the extent and severity of the claimant's anxiety.

A.R. 30-31.

The Court may consider inconsistencies in a claimant's testimony when evaluating the nature, severity, and effect of the claimed symptoms. *Thomas*, 278 F.3d at 958-59. But it is error to reject a claimant's testimony merely because symptoms wax and wane. *Id*. at 1018. Examples from the record can show clear and convincing evidence, but "the

data points [an ALJ chooses] must in fact constitute examples of a broader development to satisfy" the standard. *Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (absence of mental health symptoms in one record not sufficient); *Thomas*, 278 F.3d at 1018 (finding some mental health symptoms came and went while others persisted the whole period of disability).

The ALJ's first reason notes that Plaintiff has given inconsistent reports about her memory, understanding, and ability to follow instructions. *See* A.R. 30. Plaintiff complained about memory issues in her consultative examination in October, 2014 (*see* A.R. 496), but did not check the boxes indicating issues with memory, understanding, or following instructions in her Function Reports of February 26, 2014 and September 21, 2014 (A.R. 218; A.R. 245). The ALJ also noted that Plaintiff performed well on a memory test and exhibited the ability to follow simple one- to three-step instructions. A.R. 28. These inconsistencies constitute a clear and convincing reason for questioning Plaintiff's claims regarding her memory and understanding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (An ALJ may rely on contradictory medical evidence to discredit symptom testimony so long as he makes "specific findings justifying his decision."); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (inconsistencies between claimant's allegations of knee pain and tests showing normal knee function constituted substantial reasons to doubt credibility of claimant's testimony); *Fruits v. Colvin*, No. CV-12-02448-PHX-DGC, 2013 WL 5655563, at *7 (D. Ariz. Oct. 17, 2013) (clear and convincing evidence where the ALJ noted specific medical records that conflicted with plaintiff's alleged impairments).

The ALJ's second reason – Plaintiff's failure to report depression symptoms in her Valley Arthritis Care records – is not clear and convincing. In over one hundred pages of medical records, Plaintiff reported symptoms of depression on some occasions and not on others. *Compare* A.R. 343-45; A.R. 365-67; A.R. 378; A.R. 447; A.R. 453-54; A.R. 503-24 (reporting symptoms of depression)*, with* A.R. 346-48; A.R. 369-77; A.R. 382-93. Her failure to report symptoms on some occasions does not constitute clear and

convincing evidence that she lacked the symptoms when she clearly reported them on many other occasions.

The ALJ's third reason – Plaintiff's failure to take her anxiety medication – is clear and convincing. Doc. 15 at 4. An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" when evaluating credibility. *Molina*, 674 F.3d at 1112 (9th Cir. 2012) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). Plaintiff fails to explain why she stopped taking anxiety medication on the date indicated in the record. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (a claimant's failure to assert a good reason for not following a prescribed treatment can cast doubt on the claimant's testimony).

In summary, the ALJ provided clear and convincing reasons for discrediting Plaintiff's claims regarding her memory and understanding and the severity of her anxiety, but erred in failing to provide sufficient reasons for discounting the rest of her symptoms. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."). This error was not harmless. Plaintiff's physical limitation testimony – which was not properly discredited by the ALJ – conflicts with the RFC determination on which the ALJ based his ultimate finding of nondisability. The improperly discredited testimony could have affected the finding of nondisability.

**V.    Scope of Remand.**

The ALJ erred in his consideration of Dr. Charlie's medical opinion and Plaintiff's physical symptom testimony. Plaintiff contends that, crediting Dr. Charlie's opinions and her testimony as true, the Court must remand for an award of benefits. Doc. 14 at 11, 17. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 15 at 7-8.

"When the ALJ denies benefits and the Court finds error, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this

rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The ALJ failed to provide legally sufficient reasons for rejecting Dr. Charlie's medical opinion and Plaintiff's physical symptoms, and, if credited as true, these would require the ALJ to enter an award of benefits. *See* A.R. 71 (testimony of Social Security administration's vocational expert, concluding that Plaintiff would be precluded from doing any work if she suffered the limitations described in Dr. Charlie's opinion). The Court's independent evaluation of the record as a whole does not reveal any substantial grounds for doubting that Plaintiff is disabled. The Court concludes that remand for an award of benefits is the appropriate remedy in this case.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for an award of benefits based on Plaintiff's application dated November 26, 2013, with a finding of disability beginning August 1, 2012. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 24th day of October, 2018.

David G. Campbell
Senior United States District Judge